**IDAHO POWER COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 84–7657.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1985.

Decided July 23, 1985.

James B. Vasile, Newman & Holtzinger, P.C., Washington, D.C., for petitioner.

Joshua Z. Rokach, John Conway, Washington, D.C., for respondent.

Before WALLACE and SNEED, Circuit Judges, and CROCKER,* District Judge.

---

* Honorable Myron D. Crocker, United States District Judge, Eastern District of California, sitting by designation.

WALLACE, Circuit Judge:

Idaho Power Company (Idaho Power) appeals from a decision by the Federal Energy Regulatory Commission (FERC) to exempt the Magic Water Company (Magic Water) from obtaining a license to construct a hydroelectric facility. Idaho Power argues that FERC abused its discretion in granting the exemption because it did not determine that there was a need for the proposed project. We have jurisdiction to review FERC's exemption order under 16 U.S.C. § 825*l* (b). We affirm.

I

Magic Water applied for an exemption from the Federal Power Act's licensing requirement, *see* 16 U.S.C. § 817, pursuant to section 213 of the Public Utilities Regulatory Policies Act of 1978 (the Act), Pub.L. No. 95–617, 92 Stat. 3148 (codified at 16 U.S.C. § 823a), which allows an exemption in the case of small hydroelectric facilities that will use certain man-made conduits. Because section 210 of the Act, Pub.L. No. 95–617, 92 Stat. 3144 (codified as amended at 16 U.S.C. § 824a–3(a)(2), (b)), could require Idaho Power to purchase Magic Water's power output, Idaho Power petitioned to intervene and, when no one objected, was allowed to do so. Over Idaho Power's objections, the Deputy Director of FERC's Office of Electric Power Regulation granted Magic Water a section 213 exemption for its proposed facility. The order did not address whether there was a need for the new source of power.

Idaho Power filed an administrative appeal from the order, arguing that FERC may not grant a section 213 exemption unless it finds a need for the proposed additional power and that, within Idaho Power's system, there was no need. FERC had previously denied Idaho Power's application for a license to begin the A.J. Wiley Hydroelectric Project (Wiley Project) on the ground that Idaho Power had a surplus of energy and therefore had no need for the project. *See Idaho Power Co.*, 24 FERC ¶ 61,344, at 61,742 (Sept. 26, 1983).

FERC denied Idaho Power's appeal from the exemption order, reasoning that although the agency was responsible for balancing every consideration in a license application, Congress had itself determined that there is a continuing need for the type of projects described by section 213. FERC determined that it is therefore not required to determine whether need exists in deciding whether or not to grant a section 213 exemption from licensing. Idaho Power filed a petition for rehearing, but the request was denied. Idaho Power then filed a petition for review with this court.

II

Idaho Power's argument that Congress intended to place a need restriction on FERC's section 213 discretion relies on the fact that 16 U.S.C. § 803(a) prohibits FERC from granting a license for a proposed project without first determining whether the project is "best adapted to a comprehensive plan." The Supreme Court in *Udall v. Federal Power Commission*, 387 U.S. 428, 87 S.Ct. 1712, 18 L.Ed.2d 869 (1967), interpreted this to mean that the agency may not issue a license unless it determines that the project will be in the public interest. *Id.* at 449–50, 87 S.Ct. at 1723–24. The Court listed several factors relevant to the public interest "including future [regional] power demand and supply," i.e., need. *Id.* at 450, 87 S.Ct. at 1724. This need restriction clearly applies to the granting of licenses. Idaho Power argues that Congress intended for this need limitation on FERC's licensing discretion to carry over to FERC's discretion when acting on applications for section 213 exemptions. FERC disputes this conclusion regarding congressional intent, arguing that Congress balanced the relevant factors itself and concluded that there is a continuing need for any facility that satisfies section 213's requirements.

The Supreme Court has held that unambiguous statutory language ordinarily determines the scope of a statute "in the absence of 'a clearly expressed legislative intent[ion] to the contrary.'" *United*

*States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (*Turkette*), *quoting Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). However, we must give authoritative administrative constructions "the deference to which they are entitled." *Turkette,* 452 U.S. at 580, 101 S.Ct. 2527. The Court has stated that such constructions " 'should be followed unless there are compelling indications that [they are] wrong.' " *CBS v. FCC,* 453 U.S. 367, 382, 101 S.Ct. 2813, 2823, 69 L.Ed.2d 706 (1981), *quoting Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969). *See also The Steamboaters v. FERC,* 759 F.2d 1382, 1388 (9th Cir.1985).

There is no statutory language expressly placing a need limitation on FERC's section 213 discretion. The language of the licensing section, 16 U.S.C. § 803(a), does not expressly extend its requirement that FERC make a "best adapted" determination beyond the licensing process. The decision whether or not to grant a section 213 exemption from licensing is not part of the licensing process itself, and nothing in the language of section 213 expressly conditions an exemption on a finding of need. Thus, Idaho Power's contention that Congress intended to impose a need limitation on FERC's section 213 discretion must draw its support from the legislative history.

Congress enacted section 213 as part of a scheme designed to encourage certain hydroelectric projects by reducing some of their start-up and operating costs. *See American Paper Institute, Inc. v. American Electric Power Service Corp.,* 461 U.S. 402, 404–05, 103 S.Ct. 1921, 1923–24, 76 L.Ed.2d 22 (1983) (*American Paper*); *FERC v. Mississippi,* 456 U.S. 742, 750, 102 S.Ct. 2126, 2132, 72 L.Ed.2d 532 (1982) (*Mississippi*); H.R.Rep. No. 543, 95th Cong., 2d Sess. 22, 49, 304, *reprinted in* 1978 U.S.Code Cong. & Ad.News 7659, 7673, 7691, 7716, 7796 [hereinafter cited as House Report]; 123 Cong.Rec. 25,848 (1977) (remarks of Senator Percy); *id.* at

32,399 (remarks of Senator Cranston). Congress believed that encouragement of such projects would reduce the country's demand for traditional fossil fuels. *See American Paper,* 461 U.S. at 405, 103 S.Ct. at 1924; *Mississippi,* 456 U.S. at 750, 102 S.Ct. at 2132; House Report, *supra,* at 303, *reprinted in* 1978 U.S.Code Cong. & Ad. News at 7796. Section 210, for example, was designed to promote this goal in part by directing FERC to promulgate rules requiring utilities to purchase electricity from qualifying small power production facilities. *See American Paper,* 461 U.S. at 405, 103 S.Ct. at 1924; *Mississippi,* 456 U.S. at 751, 102 S.Ct. at 2133. Section 405 of the Act, Pub.L. No. 95–617, 92 Stat. 3156 (codified as amended at 16 U.S.C. § 2705), was similarly designed to promote this goal by creating expedited licensing procedures for a favored set of small hydroelectric projects. *See* 16 U.S.C. § 2701; Conf.Rep. No. 1750, 95th Cong., 2d Sess. 103, *reprinted in* 1978 U.S.Code Cong. & Ad.News 7797, 7837 [hereinafter cited as Conf. Report]. Section 213, which is at issue here, was designed to give an even greater incentive for a different set of such projects by granting FERC discretion to exempt them from the licensing process altogether. *See* 123 Cong. Rec. 25,848 (1977) (remarks of Senator Percy); *id.* at 32,399 (remarks of Senator Cranston). Section 405 has since been amended to allow FERC to grant similar exemptions for certain projects within the first set on a limited case-by-case basis. *See* Energy Security Act of 1980, Pub.L. No. 96–294, § 408(b), 94 Stat. 718 (codified at 16 U.S.C. § 2705(d)); Conf.Rep. No. 1104, 96th Cong., 2d Sess. 276, *reprinted in* 1980 U.S.Code Cong. & Ad.News 1743, 2077, 2171–72.

Despite this clear congressional intent to promote section 213 projects, Idaho Power would have us limit the section's potential effect by imposing a need limitation on FERC's discretion to grant a section 213 exemption. Congress did expressly reject a mandatory version of section 213 in favor of a discretionary one because of a concern that some type of limit be available in case section 213 had unforeseen consequences. *See* Conf. Report, *supra,* at 100, *reprinted*

*in* 1978 U.S.Code Cong. & Ad.News at 7834. The House had approved a mandatory version, *see id.*, but the Senate passed a discretionary one because of this concern, *see* 123 Cong.Rec. 32,399–400 (1977) (remarks of Senators Cranston and Johnston), and the Conference Committee adopted the Senate version, *see* Conf. Report, *supra*, at 100, *reprinted in* 1978 U.S.Code Cong. & Ad.News at 7834. We are unpersuaded by Idaho Power's argument that we should infer additional limits from this minor concern beyond the one expressly created by Congress. Congress' primary intent behind enacting section 213 was to encourage the construction of qualifying facilities by eliminating the start-up cost of obtaining a license. If we created a need limitation, we would give undue weight to a minor concern at the expense of section 213's primary purpose. A need limitation would reduce the desired nonmarket incentive for qualifying facilities, and increase the effect of ordinary market forces in contravention of the bulk of the legislative history.

FERC advances a different argument to sustain its position that it is not required to consider the need for additional power. It contends that Congress has already done the balancing and determined that there is a continuing "need" for all facilities qualifying under section 213. We need not decide the merits of this argument because of the sufficiency of our more moderate reading of the legislative history. We observe only that, if FERC is correct, it not only would be allowed to ignore need in granting exemptions, but also would be forbidden from considering the lack of need when denying future exemptions, to the possible detriment of its ability to deal with unforeseen and changed circumstances in the energy market of the future.

### III

█ Idaho Power argues in the alternative that, even if FERC ordinarily has discretion to grant an exemption regardless of need, it exercised that discretion arbitrarily and capriciously in this case by granting Magic Water an exemption for its proposed facility without considering need, yet contemporaneously denying Idaho Power's license application for the Wiley Project because of the lack of need.

Although an agency may not exercise its discretion in an arbitrary and capricious manner, *see* 5 U.S.C. § 706(2)(A), the disparate treatment alleged in this case is justified by the fact that the licensing process differs significantly from the exemption process. We have already decided that FERC's licensing discretion is limited by power needs, while its exemption discretion is not so limited. Thus, there was a rational basis for FERC's consideration of the need for Wiley Project power in Idaho Power's license application, but not the need for Magic Water's power in its exemption request.

The situation might be different if FERC granted some exemptions regardless of need, but denied others because of a lack of it without adequately justifying the differential treatment. But at oral argument, neither party could identify a single instance in which FERC has denied an exemption application because of a lack of power needs. Thus, it is unnecessary for us to decide whether this potential problem would transform the proper exercise of discretion in this case into an arbitrary and capricious exercise of FERC's discretion.

PETITION FOR REVIEW DENIED.