**IDAHO POWER COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 84–7450.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1985.

Decided Aug. 7, 1985.

James B. Vasile, Newman & Holtzinger, P.C., Washington, D.C., for petitioner.

John Conway, F.E.R.C., Washington, D.C., for respondent.

Before WALLACE and SNEED, Circuit Judges, and CROCKER *, District Judge.

* Honorable M.D. Crocker, United States District Judge for the Eastern District of California, sit-

SNEED, Circuit Judge:

Petitioner Idaho Power Company (IPC) petitions for review of the dismissal by the Federal Energy Regulatory Commission (FERC) of IPC's application for a license to construct and operate a hydroelectric project. FERC dismissed the application on the grounds that IPC had failed to demonstrate a need for the power that would be produced by the proposed project. We deny IPC's petition.

## I.

## FACTS

In 1980, IPC applied to FERC for a license to operate and construct the A.J. Wiley project, an 84-megawatt hydroelectric project on the Snake River in Idaho. In 1982, FERC issued an Environmental Impact Statement (EIS) on the project. In the EIS, FERC estimated, based on load forecasts submitted by IPC in 1981, that the Wiley project would be needed before 1989 to avoid energy shortages on IPC's system.

In 1983, however, FERC requested that IPC provide an updated load forecast. In response, IPC supplied FERC with a 20-year forecast that it had prepared in 1982. This forecast predicted a slower rate of load growth than did the previous forecast. According to it, IPC would not need the power from the Wiley project before the year 2002.

On September 26, 1983, on its own motion and without a hearing, FERC dismissed IPC's application. *See Idaho Power Co.*, 24 FERC ¶ 61,344 (1983). In the order of dismissal, FERC estimated that if the licensing procedure went forward, a license would be issued within one year (1984), construction would begin within the two-year limit imposed by the Federal Power Act (1986), and construction would be completed, as estimated by IPC, in three additional years (1989). Because IPC's

ting by designation.

forecast showed that the project's power would not be needed before 2002, FERC concluded that going forward with licensing would be unjustified. FERC's dismissal was without prejudice to IPC's right to refile the application if and when it could demonstrate a timely need for the project.

IPC requested a rehearing. In an order dated December 28, 1983, FERC responded to the request by staying the order of dismissal and giving IPC sixty days to demonstrate that the power from the Wiley Project would be needed by 1989. *See Idaho Power Co.*, 25 FERC ¶ 61,436 (1983).

IPC's response conceded that it would not need the power from the Wiley Project by 1989. IPC submitted a new load forecast that indicated that the power probably would not be needed until 1999, but that under a "high growth" scenario it would be needed in 1995. IPC argued that FERC should nonetheless proceed with licensing the Wiley Project because the licensing process was likely to take longer than the one year estimated by FERC, and because FERC had licensed other hydroelectric projects without requiring a showing of need. IPC also argued that FERC should engage in "site banking," the licensing of power projects before they are needed, in order to provide flexibility in energy planning.

FERC rejected IPC's arguments and, on May 4, 1984, lifted the stay of its September 26, 1983 order of dismissal. *See Idaho Power Co.*, 27 FERC ¶ 61,175 (1984).

IPC petitions for review of both the September 26, 1983 order and the May 4, 1984 order.

## II.

### DISCUSSION

#### A. *Requirement of a Showing of Need*

█ Section 23(b) of the Federal Power Act of 1920, 16 U.S.C. § 817, requires a license from FERC for the construction and operation of a hydroelectric facility. Section 4(e) of the Act, 16 U.S.C. § 797(e), authorizes FERC to license projects that are "necessary or convenient" for the development of hydroelectric power. FERC may issue a license only if, after considering all relevant factors, it finds that to do so would be in the public interest. *Udall v. FPC*, 387 U.S. 428, 450, 87 S.Ct. 1712, 1724, 18 L.Ed.2d 869 (1967).

In 1978, Congress passed the Public Utility Regulatory Policies Act (PURPA), Pub.L. No. 95–617, 92 Stat. 3117 (1978). Section 213 of PURPA, 16 U.S.C. § 823a, authorizes FERC to grant exemptions from the licensing requirement to small (under 15 megawatts, *see id.* § 823a(b)) hydroelectric facilities that utilize water-supply conduits that are operated primarily for purposes other than power generation. Section 210 of PURPA, 16 U.S.C. § 824a–3, requires electric utilities to purchase power from qualifying small (under 80 megawatts, *see id.* § 796(17)(a)(ii)) power production facilities.

IPC claims that FERC has acted inconsistently with its own precedents in conditioning a license for the Wiley Project on a showing of need. IPC points to cases where FERC has, pursuant to PURPA section 213, issued exemptions from licensing for small hydroelectric projects without requiring a showing of need. IPC, with some umbrage, notes that one such project, exempted in *Magic Water Co.*, 28 FERC ¶ 61,165 (1984), is within IPC's service area and that, under PURPA section 210, IPC will be *required* to purchase the power from that project at the same time that IPC is unable to construct its own hydroelectric project because it has not made an adequate demonstration of need.[1] In this fashion, IPC's prerequisite need becomes increasingly difficult to establish. IPC also argues that FERC's dismissal of its application is inconsistent with FERC's decision in one large-facility case, *City of Idaho Falls*, 25 FERC ¶ 62,345 (1983).

The inconsistency of which IPC complains springs from the pertinent statutes.

---

1. In a companion case, *Idaho Power Co. v. FERC*, 766 F.2d 1348 (9th Cir.1985), we upheld, against a challenge by IPC, FERC's granting of an exemption in *Magic Water Co.*

The requirement of a showing of need for large facilities arises from the Federal Power Act's requirement that licenses be granted only for projects that are "necessary or convenient." The exemption of certain small conduit facilities from that requirement is authorized by PURPA section 213. There is no reason, therefore, to expect the standards for the two types of facilities to be the same. *See Idaho Power Co. v. FERC*, 766 F.2d 1348 (9th Cir.1985).

The distinction drawn between the two types of facilities is quite rational. By utilizing existing conduits, small facilities that qualify under PURPA section 213 produce electric power with minimum impact on the environment and on navigation and with little or no use of depletable resources. Congress therefore wished to encourage the development of such facilities, even in the absence of power deficits, in order to displace other sources of power. *See FERC v. Mississippi*, 456 U.S. 742, 750–51, 102 S.Ct. 2126, 2132–33, 72 L.Ed.2d 532 (1982); *Idaho Power Co.*, slip op. at ——; H.R.Rep. No. 543, vol. 1, 95th Cong., 1st Sess. 303 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 7659, 7671, 7796.

Nor is FERC's dismissal of IPC's application inconsistent with its action in *City of Idaho Falls*. In *Idaho Falls*, FERC found that the applicant needed the proposed Gem State hydroelectric project in order to meet a projected increase in its loads, in order to reduce its dependence on purchases of power from the Bonneville Power Administration, and in order to help meet projected regional energy deficits. *See* 25 FERC ¶ 62,345, at p. 63,567. Thus, the case does not support IPC's claim that FERC has licensed large hydroelectric facilities without requiring a showing of need.

### 3. *Time Required for Licensing*

In requiring IPC to show that it would need the power from the Wiley Project by 1989, FERC assumed that, if the licensing

procedure went forward, the license would be granted within one year. That assumption is unrealistic, asserts IPC. IPC cites examples of cases that took three years from the time that FERC decided to hold a hearing until a license was issued. IPC also argues that, because other parties have intervened to oppose its application, it is likely that a decision to grant a license will be appealed to the full Commission and that the appeal will consume another one to two years. Finally, IPC points out that judicial review of the Commission's decision could take an additional two or more years. Therefore, IPC concludes, it would be prudent to proceed with licensing now, even if the project will not be needed until the middle or late 1990's.

■ We agree with IPC that FERC's assumption that licensing of the Wiley Project could be completed within one year was not supported by substantial evidence. The error, however, was harmless. Even if IPC's most pessimistic time estimates were accurate, the project would still be completed before IPC would need the power even under its most generous load forecast, and long before the power would be needed under its most realistic forecast. Moreover, FERC, in its order of May 4, 1984, noted that IPC's projections did not take into account the North Fork Payette Project, a 300-megawatt hydroelectric facility that has been licensed by FERC but not yet constructed by IPC. Construction of that project would further delay IPC's need for the Wiley project.[2] We therefore find that FERC's conclusion that IPC had not demonstrated a timely need for the Wiley project was reasonable.

### C. *"Site Banking"*

IPC argues that FERC's dismissal of IPC's application is arbitrary and capricious because FERC failed to consider the option of "site banking." Site banking is the licensing of power projects in advance of a showing of need. The purpose of site

---

**2.** We also note that construction of the North Fork Payette Project has itself been postponed, at IPC's request, because of a diminished need for power by IPC. The postponement further supports FERC's position that IPC does not need an additional hydroelectric project.

banking is to promote flexibility by enabling construction to begin on short notice whenever a need develops. Site banking by the Bonneville Power Administration (BPA) is in fact advocated in the Northwest Conservation and Electric Power Plan promulgated by the Northwest Power Planning Council pursuant to the Pacific Northwest Electric Power Planning and Conservation Act, 16 U.S.C. §§ 839–839h (the Regional Act).

Alternatively, IPC suggests that FERC could "continu[e] to process the Wiley application on all issues other than the need issue" and then suspend proceedings until IPC can show a need for the project. This procedure would serve the same purposes as site-banking.

FERC's final order shows that FERC did consider IPC's site-banking suggestion, but that FERC rejected it as inconsistent with the Federal Power Act. *See* 27 FERC at pp. 61,321–22. FERC interprets the Act's requirement that a project be "necessary or convenient" to preclude the licensing of a project in the absence of a demonstrated need for power. We must accept FERC's interpretation if it is reasonable and not contrary to the intent of the Act. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* — U.S. —, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).

■ In this case, FERC's interpretation is not only clearly reasonable, *see Udall v. FPC,* 387 U.S. at 444–50, 87 S.Ct. at 1720–24 (Commission should consider whether power is needed before licensing project), it is also supported by the terms of the Act, which envisions prompt implementation of a project after it is licensed. Section 13 of the Act, 16 U.S.C. § 806, requires that construction begin within two years of the issuance of a license. (FERC included this two-year period in its calculation of when the project could be operational if licensing went forward.) Although FERC may extend the period for commencement of construction, the extension may not be for more than an additional two years. *Id.* Thus, it is reasonable to interpret the Act

as inconsistent with the concept of site banking.

FERC also found that if it suspended or "banked" IPC's application for the Wiley Project, the site of that project would be tied up and other potential applicants who may have a need for power would be prevented from using it. FERC reasonably found that such tying-up of the site is contrary to the public interest and to the purposes of the Federal Power Act.

■ IPC argues that, despite these considerations, FERC is required by the Regional Act to consider banking the Wiley site because site-banking is advocated in the Northwest Conservation and Electric Power Plan, which was promulgated pursuant to section 4(d) of the Regional Act, 16 U.S.C. § 839b(d). IPC misconstrues the Regional Act and the Plan. The purpose of the Plan is to guide the Administrator of the Bonneville Power Administration (BPA). *See* 16 U.S.C. §§ 839b(d)(2), 839b(e)(3)(D). Although the Act calls on the Administrator to encourage "appropriate Federal agencies" to assist in the implementation of the Plan, 16 U.S.C. § 839b(g)(3), it does not call for such agencies to follow or consider the Plan in acting on proposals for projects unconnected with BPA. The Plan does not advocate the banking of sites by individual utilities; rather, it proposes the banking of projects that have been selected by the Power Planning Council and BPA as potentially needed by BPA to serve regional needs. *See* Addendum to Brief for Petitioner, Plan at 3–3. This may appear to IPC as tilting the scales of power development against individual utilities. If so, the correction must be supplied by Congress.

Thus, we conclude that FERC acted within the ambit of its authority in rejecting the site-banking idea as inconsistent with FERC's interpretation of the Federal Power Act and with FERC's view of the public interest.

The petition is DENIED.