**CITY OF CENTRALIA, WASHINGTON, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

and

**Pacific Power and Light Company, Respondent-Intervenor.**

No. 85–7082.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 1985.

Decided Sept. 4, 1986.

476

Frank W. Frisk, Jr., Washington, D.C., for petitioner.

John N. Estes, III, F.E.R.C., Washington, D.C., for respondent.

Hugh Smith, Stoel, Rives & Boley, Portland, Or., for respondent-intervenor.

Before REINHARDT and BEEZER, Circuit Judges, and COYLE,* District Judge.

REINHARDT, Circuit Judge:

In this challenge to the Federal Energy Regulatory Commission's disposition of two competing applications to develop a hydroelectric project at a dam, we review the policies developed by the Commission to reconcile its differing mandates under the Federal Power Act and the Public Utility Regulatory Policies Act of 1978, as amended by the Energy Security Act of 1980. We affirm those policies under the two acts and affirm its disposition of the competing applications.

## I. BACKGROUND

### A. *Statutory Framework*

Congress enacted the Federal Power Act (FPA) to promote the " 'comprehensive development of water power.' " *Chemehuevi Tribe of Indians v. FPC,* 420 U.S. 395, 405, 95 S.Ct. 1066, 1073, 43 L.Ed.2d 279 (1975) (quoting *FPC v. Union Electric Co.,* 381 U.S. 90, 101, 85 S.Ct. 1253, 1259, 14 L.Ed.2d 239 (1965)). In furtherance of that objective and to assure that such development serve the public interest, Congress established a licensing scheme, administered by the Commission, in Subchapter I of the FPA, 16 U.S.C. §§ 791a–823a (1982), for the construction, operation, and maintenance of hydroelectric power projects. *Northern Colorado Water Conservancy District v. FERC,* 730 F.2d 1509, 1512 (D.C.Cir.1984). The Commission must find that the licensee's project will be "best adapted to a comprehensive plan for ... the improvement and utilization of water-power development, and for other beneficial public uses...." 16 U.S.C. § 803(a); *see also Udall v. FPC,* 387 U.S. 428, 450, 87 S.Ct. 1712, 1724, 18 L.Ed.2d 869 (1967).

The Commission may issue preliminary permits to competing license applicants. 16 U.S.C. § 797(f). A permit maintains the permittee's priority of application against potential competitors for the project site while the permitee compiles the data required for licensing. 16 U.S.C. § 798. A permit guarantees priority of consideration to the permittee for up to three years. 16 U.S.C. § 798. A permit is not a prerequisite to studying a site or to submitting a license application.

Prompted by the energy crisis of the 1970's, Congress enacted the Public Utility Regulatory Policies Act of 1978 (PURPA) in order to expedite the development of certain hydroelectric power projects. *Idaho Power Co. v. FERC,* 766 F.2d 1348, 1350 (9th Cir.1985); H.R.Rep. No. 543, 95th Cong., 2d Sess. 22, 49, 304, *reprinted in* 1978 U.S.Code Cong. & Ad. News 7659, 7673, 7691, 7716, 7796. PURPA authorizes the Commission to exempt from the licensing procedures of the FPA projects with a generating capacity of up to fifteen megawatts, but only if those projects will utilize solely the hydroelectric potential of existing water conduits not operated primarily for the production of power. 16 U.S.C. § 823a(a), (b).

In the Energy Security Act of 1980, 16 U.S.C. §§ 2705, 2708 (1982), Congress amended PURPA to expand the Commission's exemption authority to include projects of up to five megawatts that would utilize the hydroelectric potential at an existing dam; however, to receive an exemption under the 1980 amendments, the project's completion must not require any construction or enlargement of the existing dam's impoundment structures, 16 U.S.C. § 2708(a)(6). Neither PURPA as originally enacted nor the Energy Security Act

---

* The Honorable Robert E. Coyle, United States District Judge for the Eastern District of California, sitting by designation.

amendments requires that an exemption proposal be "best adapted" to the site.

## B. *Regulatory Framework*

### 1. The Standard for Exemptions

Under its Energy Security Act regulations, the Commission may grant exemptions for small hydroelectric projects if it finds the exemption to be consistent with the public interest. 18 C.F.R. § 4.105(b)(5) (1984). If the Commission does not act on an application for exemption within 120 days after notifying the applicant that its application has been accepted for filing, the exemption will be deemed consistent with the public interest and granted. 18 C.F.R. § 4.105(b)(4) (1984); *International Paper Co. v. FERC*, 737 F.2d 1159, 1162 (D.C.Cir. 1984).

The Commission has interpreted its public interest standard to require that an exemption proposal "adequately utilize[ ] the water resources of the site, taking into account other considerations such as environmental constraints." *Frontier Technology, Inc.*, 22 FERC ¶ 61,267, at 61,479 (1983). Under the Commission's informal test for adequate utilization, a project adequately utilizes the water resources of a site if it leaves the available water unused no more than 25% of the time. *Western Power, Inc.*, 23 FERC ¶ 61,343, at 61,745 n. 9 (1983). If an exemption proposal does not meet this guideline, the applicant must demonstrate why a lesser use is nevertheless appropriate. *Id.* Otherwise, the Commission will conclude that the exemption is not in the public interest and will not grant it. *Id.*

### 2. The Property Rights Requirement for Exemptions

The Commission requires that exemption applicants own or have an option to purchase the property rights necessary to develop their project. 18 C.F.R. § 4.103(b)(2)(ii) (1984). Unlike license holders, exemption holders have no power of eminent domain. *Minnesota Department of Natural Resources*, 31 FERC ¶ 61,223, at 61,447 (1985). The Commission's ownership requirement avoids delays from property rights disputes, thereby effectuating Congress' directive to expedite power development. *See* Preamble to Order No. 106, *FERC Statutes & Regulations, Regulations Preambles* 1977–81 ¶ 30,204 at p. 31,366 (1980); 45 Fed.Reg. 76115, 76119 (Nov. 18, 1980); *Fluid Energy Systems, Inc.*, 19 FERC ¶ 61,040, at 61,061 (1982). Exemption applications must include an appendix with documentary evidence of the requisite property rights. 18 C.F.R. § 4.107(a) (1984).

### 3. Competition Between Exemptions and Permits

The Commission has established a set of procedures through rulemaking and adjudication for disposing of mutually exclusive permit and exemption applications. Under the regulations in effect during the challenged proceedings, when an exemption applicant and a permit applicant compete for the same site, "the Commission will favor the application for exemption." 18 C.F.R. § 4.104(e)(1) (1984). The Commission applies this preference for exemption applications in a two-step analysis. The Commission determines first "whether the permit applicant has shown through substantiating information that its proposal is superior to that of the exemption applicant's plans; and [second,] whether the exemption application adequately utilizes the water resources of the site, taking into account other considerations such as environmental constraints." *Frontier Technology Inc.*, 22 FERC, at 61,479; *see also Western Power, Inc.*, 23 FERC, at 61,745.[1] If, having initially rejected the permit applicant for failure to substantiate the superiority of its proposal, the Commission then denies the exemption application because it would not adequately utilize the site, the Commission

---

1. Subsequent to its disposition of this case, the Commission subdivided step one of the analysis into two parts; it determined first whether the permit applicant has substantiated its proposal, and second which proposal is superior. *Dennis v. McGrew*, 32 FERC ¶ 61,229, at 61,540 (1985).

will reconsider the permit proposal.[2] *Frontier Technology Inc.*, 22 FERC, at 61,479.

## C. *Proceedings Before the Commission*

PP & L is a co-owner with other utilities of the Centralia Steam Electric Plant located at the Skookumchuck Dam in Washington state. The dam was constructed as a single-purpose water supply project to provide water for the electric plant and to mitigate the impact of the plant on fisheries downstream. An opening in the middle of the dam wall (the "outlet works") releases water for both the plant and the fisheries. The dam operates within certain environmental parameters: PP&L has an agreement with the Washington Departments of Fisheries and Game to regulate the release of water downstream and to maintain the reservoir level so as not to disrupt fish migration. Additionally, the state operates salmon rearing ponds downstream from the dam which are dependent upon the close regulation of the temperature of the water released from the dam.

In 1981, PP & L filed an exemption application on its own behalf and on behalf of its co-owners for a 980–kilowatt project at the dam. PP & L proposed using the water from the existing outlet works for its generating facility. The relatively small size of the outlet limits the amount of water available for power production. Several months later the City of Centralia filed an application for a preliminary permit to study the "technical, environmental, economic and financial feasibility" of a 5200–kilowatt project at the dam. Centralia proposed to supplement the existing outlet works by installing larger outlet works elsewhere on the dam.

In its pleadings, Centralia claimed that PP & L's proposed project would underutilize the water resources of the dam. In response, PP & L claimed that a 5200–kilowatt project could be operated at no more than a third of its capacity, due to the physical and environmental constraints of the site. According to PP & L, a power facility larger than the one it proposed would endanger the fish rearing facilities downstream from the dam. PP & L deemed the construction of new outlet works "impractical," since construction would have to proceed underwater yet not disrupt the operation of the dam.

The Commission Deputy Director acting pursuant to authority delegated to him by the Commission, *see* 18 C.F.R. § 375.308 (1985), granted PP & L's exemption application and denied Centralia's permit application. The order noted that the Commission's regulations favor exemption applications over permit applications.

Centralia appealed the order to the Commission, on the grounds, *inter alia,* that PP & L's proposed project would underutilize the site and hence was not a proper project for an exemption, and that a hearing should have been held to determine which of the two proposals was "best adapted" to the site under section 7(a) of the FPA, 16 U.S.C. § 800(a). Centralia also claimed that its proposed project was designed not to disturb existing fish facilities.

In response to Centralia's claim that PP & L's project would underutilize the site, the Commission asked PP & L to provide an environmental analysis and cost estimates on the feasibility of enlarging the outlet works toward the end of meeting the Commission's test for adequate utilization. In response to the Commission's request, PP & L analysed the feasibility of enlarging the outlet works to achieve a 3500–kilowatt generating capacity, which modification would result in compliance with the utilization test. PP & L concluded that the project would operate at a large annual

---

2. The current regulation on competing exemption and permit applications continues to favor the exemption applicant. The new regulation expressly requires substantiation of the project plans by all applicants. While the Commission will give preference to the applicant whose substantiated plans are "better adapted" to the site, if the substantiated plans of both applicants are equally well adapted, the Commission will favor the exemption application. 18 C.F.R. § 4.37(d)(1) (1985). Thus, again, unless the permit applicant substantiates the superiority of its proposal, it cannot defeat a competing bid by an exemption applicant.

loss and would disrupt the fisheries operations. Centralia responded to PP & L's comments by proposing an alternative 4410–kilowatt project with a different design than its original proposal.[3] Centralia contended that "detailed studies" would be necessary to determine the "optimum project" at the site. Centralia asserted, however, that its new proposal "would diminish the concerns raised by PP & L over installing a deep multiport intake in the dam."

While the Commission was analyzing the additional information it had received, Centralia moved to revoke PP & L's exemption, on the ground that the exemption application did not contain sufficient documentation of PP & L's property rights in the Skookumchuck Dam site. PP & L responded that since only the lack of documentation and not its ownership of rights in the dam was challenged, revocation of the exemption would be inappropriate.

Upon this record, the Commission denied Centralia's appeal and upheld issuance of the exemption to PP & L. The Commission found the denial of Centralia's permit application proper because Centralia did not provide a cost estimate of its proposal or provide sufficient details regarding the possible adverse environmental impacts of modifying the existing outlet works. The Commission also found that PP & L's project adequately developed the site because PP & L had demonstrated that a larger project would not be feasible. The Commission denied Centralia's request for an evidentiary hearing on the two proposals on the ground that Centralia had not made an adequate proffer of evidence to support such a hearing. Finally, the Commission rejected Centralia's argument that PP & L's application lacked sufficient documentation of property rights, finding the documentation to be "adequate," if "minimal," absent any allegation that PP & L's property rights were disputed or that another entity held the necessary rights.

In its petition for rehearing, Centralia argued that the Commission's requirement that Centralia provide cost estimates in order to substantiate its proposal violated both the FPA and the Commission's own regulations and precedent. The Commission upheld its cost estimate requirement for permit applicants competing with exemption applicants, and held as well that regardless of Centralia's failure to provide cost data, denial of the permit was proper, since Centralia had not demonstrated that it could construct either of its proposals without adversely affecting the fishery resources of the river. In rejecting Centralia's challenge to PP & L's documentation of its property rights, the Commission found the requisite evidence of ownership, absent any timely allegation that PP & L's ownership was disputed or that some other entity held necessary rights, in two agreements attached to PP & L's exemption application referring to PP & L as the "owner" of the Skookumchuck dam and reservoir.[4]

Centralia seeks review of the Deputy Director's delegated order granting PP & L's exemption and denying Centralia's permit application, the Commission order on appeal and the Commission order on rehearing. We have jurisdiction to review orders of the Commission under 16 U.S.C. § 825l(b).[5] On this review, we decide whether the Commission abused its discretion (1) by requiring Centralia to substantiate the economic feasibility of its proposal in order to defeat PP & L's exemption application, and by finding that Centralia

---

**3.** Presumably Centralia did not apply for an exemption for its revised proposal, despite the reduction in the number of kilowatts, because the project would entail altering the dam's structure. *See* 16 U.S.C. § 2708(a)(6).

**4.** The agreements were between PP & L and the Washington Departments of Game and Fisheries, regarding PP & L's obligations to protect the wildlife and fishery resources at the dam site.

**5.** To be final, a delegated order must be appealed to the Commission. A Commission decision on a petition for appeal is a prerequisite to a request for rehearing. 18 C.F.R. § 385.1902 (1985). We may review Commission orders only when the aggrieved party has applied to the Commission for a rehearing. 16 U.S.C. § 825l(b).

failed to substantiate both the economic and the environmental feasibility of its proposal, (2) by its use of an "adequate utilization" standard for evaluating exemption proposals, (3) by finding that PP & L's proposal would adequately utilize the dam site, (4) by denying Centralia's request for a hearing on the two proposals, and (5) by upholding the grant of PP & L's exemption against Centralia's challenge to PP & L's documentation of its property rights in the site.

## II. STANDARD OF REVIEW

Our review of the Commission's orders is limited. We may reverse a Commission decision only if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or not in accordance with law. 5 U.S.C. § 706(2)(A) (1982); *Steamboaters v. FERC*, 759 F.2d 1382, 1388 (9th Cir.1985). We owe great deference to the Commission's interpretation of the law it is charged with administering, *Steamboaters*, 759 F.2d at 1388, and we must defer to the Commission's interpretation of its own rules, unless the interpretation is plainly erroneous, *Pacific Gas & Electric Co. v. FERC*, 746 F.2d 1383, 1386 (9th Cir.1984).

## III. THE DENIAL OF CENTRALIA'S PERMIT APPLICATION

### A. *Requirement of Cost Estimates*
#### 1. Validity of the Requirement

Centralia argues that the Commission violated both section 5 of the Federal Power Act, 16 U.S.C. § 798, and the Commission's own regulations and precedent by requiring Centralia to justify the economics of its proposal in order to compete with an exemption applicant. Centralia argues that since the purpose of a permit under the

FPA is to conduct the feasibility studies necessary to obtain a license, the Commission cannot require a permit applicant to provide the answers that the study would reveal. Centralia also alleges without contradiction from the Commission that the Commission had not required permit applicants to provide cost estimates as part of their substantiating data prior to this case, and argues that this requirement exceeds the scope of the Commission's substantiation provision.

■ The Commission's requirement that a permit applicant substantiate the superiority of its proposal in order to defeat an exemption application is a reasonable accommodation of the differing mandates of the FPA and of PURPA, as amended by the Energy Security Act. By allowing a permit applicant to defeat an exemption proposal upon demonstrating the superiority of its proposal, the Commission gives effect to the FPA's policy of *promoting the maximum development* of the nation's hydroelectric energy resources. By requiring a permit applicant who is in competition with an applicant for exemption to substantiate its proposal in order to defeat an exemption applicant, the Commission gives effect to PURPA's policy of *expediting the development* of hydroelectric power.[6]

In the absence of a competing permit proposal, the Commission would be able to act upon an exemption application immediately upon submission (and is in fact required so to act, *see* 18 C.F.R. § 4.105(b)(4) (1984)) because "accepted exemption applications are fully developed proposals which are to be put into effect soon after issuance." *Frontier Technology*, 22 FERC, at 61,479. The Commission's regulations require exemption applications to provide a

---

6. Centralia cites *Western Power, Inc.*, 23 FERC ¶ 61,343 (1983) and *Fairview Orchards Associates*, 24 FERC ¶ 61,022 (1983), for the proposition that under Commission precedent on competing permit and exemption applications, Centralia should not have been required to produce cost data in order to prevail against PP & L's exemption application. Both cases are inapposite. In both, the Commission first rejected an exemption proposal on the ground that it would

not adequately develop the site and then either granted or authorized for consideration unsubstantiated competing permit applications. The cases do not, therefore, reach the issue of the substantiation required of a permit applicant in order to prevail over an exemption application, since at the time the permits were granted, the permit applicants were not in competition with the exemption applicants.

description of the project and its mode of operation, as well as an environmental report. 18 C.F.R. § 4.107(c), (e) (1984). A permit application, on the other hand, ordinarily need only provide a project description "to the extent possible," 18 C.F.R. § 4.81(b) (1984); the remainder of the relevant information is not required until later in the licensing process. Consequently, permit applications "are usually speculative in nature and rarely offer substantiated information." *Frontier Technology*, 22 FERC, at 61,479. Requiring permit applicants who seek to compete with exemption applicants to present substantiated proposals puts permit and exemption applicants on the same footing, and preserves the Commission's ability to proceed under either statute. Were the Commission to grant permits without requiring substantiation, and defer its final decision on competing exemption proposals until permittees completed their substantiating studies under the permit, its decision on the exemption applications could be delayed for a period of up to three years, *see* 16 U.S.C. § 798. The Commission would then in large part have defeated the policy that underlies PURPA's exemption of smaller projects from the time-consuming licensing procedures of the FPA.

The Commission's requirement that a permit applicant provide cost data is not only reasonable but plays an important role in implementing the Commission policy of requiring permit applicants who seek to defeat competing exemption applicants to substantiate their proposals. A project may be technically feasible, yet clearly inappropriate for a site because of its construction or its operating costs. Although many permit applicants will undoubtedly find it difficult to substantiate their proposals at the permitting stage, an applicant has no entitlement to a permit under the FPA. We note in any case that an applicant's failure to substantiate its proposal will not inevitably foreclose it from obtaining a permit. If the competing exemption applicant cannot demonstrate that it would adequately develop the site, the Commission will reconsider an unsubstantiated per-

mit application. *See, e.g., Western Power, Inc.*, 23 FERC, at 61,745; *Fairview Orchards Associates*, 24 FERC ¶ 61,022, at 61,094 (1983).

2. Request for a Remand for Rehearing

Centralia requests that if we uphold the Commission's cost estimate requirement, we remand the case for rehearing on the costs of Centralia's and PP & L's two proposals. Centralia argues that, because prior to the present case the Commission had not specifically required cost estimates from permit applicants competing with exemption applicants, Centralia relied to its detriment on the Commission's past policy in not providing those estimates, and should now be provided with the opportunity to supply that data.

■ We deny Centralia's request for a remand. We do not find that Centralia was unfairly surprised by the Commission's cost estimate requirement. Requiring a cost estimate is hardly a surprising interpretation of the Commission's substantiation requirement. Further, a permit applicant should anticipate a challenge from its competitor on the costs of its proposal. In the present case, PP & L challenged the economic viability of a larger project at the dam site. Contrary to Centralia's claims, PP & L's economic analysis, though directed to its hypothetical 3500–kilowatt project and not to either of Centralia's proposals, put Centralia on notice that cost would be an issue in the proceedings.

Even were we to find that the cost estimate requirement represented new administrative policy, we would not remand the case for rehearing. Ever since *SEC v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court has consistently ruled that agencies may announce and implement new policy through adjudication. *Montgomery Ward & Co. v. FTC*, 691 F.2d 1322, 1328 (9th Cir.1982). An agency may "clarify an uncertain area of the law, so long as the retroactive impact of the clarification is not excessive or unwarranted." *Id.* Because we find the cost estimate requirement to be

a reasonable interpretation of the substantiation requirement and because PP & L raised cost as an issue during the proceedings, we conclude that whatever retroactive effect the Commission's requirement might have had was not "excessive or unwarranted."

Our decision not to remand is further supported by the fact that the Commission's denial of Centralia's permit application was based not only on Centralia's failure to provide cost data but on its failure to substantiate the environmental acceptability of its proposal as well. Centralia does not challenge the propriety of the Commission's substantiation requirement as to environmental and technical feasibility, but only as to economic feasibility. We have already rejected that challenge. Centralia's only argument regarding the Commission's findings on its failure to substantiate the environmental feasibility of its proposal is that it did in fact provide adequate substantiation. We affirm below the Commission's finding of inadequate environmental substantiation. For that reason as well, remand is unwarranted.

B. *The Commission's Finding of Inadequate Substantiation Regarding Environmental Feasibility*

■ The Commission properly found that Centralia failed to substantiate its proposal from an environmental standpoint. Subsequent to PP & L's submission of data showing that a larger project would have adverse impacts on the fish habitat, Centralia never provided data showing how it would mitigate those impacts. Instead, it submitted a new proposal and claimed that the environmental constraints raised by PP & L would not present "insurmountable obstacles" to the development of the site. This claim provided the Commission with no basis for concluding that Centralia's proposal was superior to PP & L's and for overriding the Commission's regulatory preference for exemption proposals. Centralia attempts on this appeal to rely on PP & L's data on the existing outlet works to substantiate its proposal. Since Centralia

proposed to install new outlet works, however, PP & L's data cannot supply the requisite substantiation for Centralia's project. We affirm the Commission's denial of Centralia's permit application for failure to substantiate the environmental feasibility of its proposal.

## IV. ISSUANCE OF PP & L'S EXEMPTION

### A. *Finding of Adequate Utilization*

The Commission granted PP & L's exemption upon finding that the proposal would adequately utilize the water resources at the site. Centralia challenges both the Commission's use of an adequate utilization standard and the finding made under it. Centralia argues that the Commission should have compared Centralia's and PP & L's proposals under the "best adapted" standard of section 7(a) and 10(a) of the FPA, 16 U.S.C. §§ 800(a), 803(a). That standard is considerably more rigorous than the "public interest" standard under which the Commission evaluates exemption applications, *see* 18 C.F.R. § 4.105(b)(4), (5) (1984). Under the "best adapted" standard, the Commission must assure the "highest and best use" of the site and not merely that the license suit the public interest. *Municipal Electric Association of Massachusetts v. FPC*, 414 F.2d 1206, 1207 (D.C.Cir.1969).

#### 1. The Adequate Utilization Standard

■ Since Centralia failed to substantiate its proposal the Commission could not compare that proposal to PP & L's, no matter what the standard. The only issue, therefore, is what standard the Commission should use when it evaluates an exemption application at a non-competetive stage of the proceeding. We find the Commission's use of an "adequate utilization" standard to be proper. The "best adapted" standard of section 10 of the FPA applies only to the granting of a license; it does not limit the Commission's discretion in granting an exemption from licensing. *Idaho Power v.*

*FERC,* 766 F.2d 1348, 1350 (9th Cir.1985).[7] Likewise, section 7(a) of the FPA, under which the Commission may give preference to the "best adapted" of competing permit or license applications, does not by its terms extend to exemption applications, competing or otherwise. *See Hirschey v. FERC,* 701 F.2d 215, 219 (D.C.Cir.1983) ("nothing in the relevant statutes or regulations ... requires comparative evaluation of mutually exclusive applications for exemptions") (emphasis omitted). Given Congress' intent in enacting PURPA to promote the immediate development of certain hydroelectric projects, *Idaho Power Co.,* 766 F.2d at 1350, while protecting the environment, *Tulalip Tribes of Washington v. FERC,* 732 F.2d 1451, 1455 (9th Cir.1984), we cannot say that the public interest standard of the Commission's exemption regulations constitutes an arbitrary interpretation of the Energy Security Act. Nor can we find that granting exemptions upon a finding that the proposed project would adequately utilize the water resources at a site is a plainly erroneous interpretation of that standard. We therefore uphold the Commission's use of an adequate utilization test for evaluating exemption applications.[8]

### 2. The Substantive Determination

■ Centralia argues that the Commission's finding that PP & L's proposed project would adequately utilize the site's water resources was arbitrary and not based on substantial evidence, since it rested on PP & L's analysis of a hypothetical 3500–kilowatt project which neither appli-

cant proposed to build. Centralia mistakes the purpose of that analysis. PP & L could meet Centralia's charge that its project would underutilize the water resources only by showing that a project large enough to meet the Commission's percentage-of-utilization test was not feasible. *Western Power, Inc,* 23 FERC, at 61,745 n. 9. The 3500–kilowatt project at an enlarged outlet works would have enabled PP & L to utilize the water resources more than 75% of the time. However, PP & L provided evidence that such a project would disrupt the temperature and flow control at the dam; that releasing water through the enlarged outlet works rather than over the spillway would block fish migration; that the loss of temperature control would render useless the state's downstream hatchery; and that the enlarged facilities would operate at a $1.5 million annual loss. We find that the foregoing showing provided the Commission with substantial evidence upon which to conclude that a project that would utilize the water resources more than 75% of the time was not feasible and that PP & L's 980–kilowatt project would adequately develop the site even though it would leave the water resources unused more than 25% of the time.

■ Contrary to Centralia's claim, the Commission did not act arbitrarily in basing its finding of adequate utilization on an analysis of the feasibility of enlarging the outlet works rather than on an analysis of Centralia's alternative proposal to install new outlet works. Since Centralia failed to substantiate the feasibility of its proposal,

7. Because the granting of exemptions is not controlled by section 10(a), Centralia's argument that the Commission violated the FPA and *Udall v. FPC,* 387 U.S. 428, 450, 87 S.Ct. 1712, 1724, 18 L.Ed.2d 869 (1967), by not considering the relative needs of Centralia and PP & L for the power that would be generated from the site is without merit.

8. Although we do not now determine the appropriate standard for evaluating substantiated competing permit and exemption applications, we note that the Commission's current regulation states that the Commission will favor the "better adapted" of the two proposals. 18 C.F.R. § 4.37 (1985). This "better adapted" standard

of the regulation appears to be less stringent than the "best adapted" standard of the FPA, 16 U.S.C. §§ 800(a), 803(a), since the regulatory standard requires merely a comparative evaluation of the competing proposals, whereas the statutory standard suggests that a license applicant must ultimately meet an absolute standard. Such a difference between the two standards may be appropriate, since at the stage of the proceedings under review neither the permit nor the exemption application would be required to meet the FPA's "best adapted" standard were either application not in competition with the other.

the Commission was under no obligation to consider that proposal as part of its evaluation of PP & L's exemption application.

### 3. Denial of a Hearing

■ Centralia's argument that the Commission erred in not holding a hearing on the merits of Centralia's and PP & L's proposals fails for a similar reason. The Commission is required to provide an adversarial hearing only when genuine issues of material fact are in issue. *Pacific Gas & Electric Co. v. FERC,* 746 F.2d 1383, 1386 (9th Cir.1984); *City of Ukiah v. FERC,* 729 F.2d 793, 799 (D.C.Cir.1984). The petitioner has the "burden of tendering evidence suggesting the need for an adjudicatory hearing." *Sierra Association for Environment v. FERC,* 744 F.2d 661, 663 (9th Cir.1984). The Commission properly found that Centralia had not met its burden for obtaining a hearing since Centralia failed to offer substantiating evidence for its proposal.

### 4. Remaining Arguments

We find no merit to Centralia's contention that the Commission's decision to issue the permit should be reversed because (1) PP & L's alleged underdevelopment of the site would violate section 10(h) of the FPA, 16 U.S.C. § 803(h), which prohibits agreements to limit the output of electrical energy, and (2) PP & L proposed an undersized project in order to thwart Centralia's alleged future right to develop the site.

### B. *PP & L's Documentation of its Property Rights*

■ Centralia argues that the Commission should revoke PP & L's exemption because PP & L failed to document the property rights necessary for development of the site. *See* 18 C.F.R. § 4.107(a)(1) (1984). We affirm the Commission's finding that, absent a showing that PP & L

lacked the requisite property rights in the dam, PP & L's documentation was sufficient. An unsubstantiated challenge to ownership will not defeat an exemption application if the Commission's inspection of the application reveals that the applicant possesses the necessary rights. *Hydro Development Group, Inc.,* 19 FERC ¶ 61,229, at 61,450 (1982). Here, Centralia does not challenge PP & L's present ownership of the dam site, but only the adequacy of its documentation of that ownership.[9] We note that in its brief Centralia itself refers to PP & L as one of the "owners" of the generating facility. Under *Hydro Development Group,* a challenge solely to the adequacy of documentation will not defeat an exemption application if the Commission's inspection of the application reveals even the most minimal evidence that the applicant possesses the necessary rights. Although the Commission's reliance on PP & L's agreements with the state of Washington as documentation of PP & L's property rights in the site appears to be an after-the-fact justification, we see no reason to overturn the Commission's action on that ground. The Commission could have reasonably relied in the first instance on the state's designation of PP & L as the owner of the dam, given the important purpose of the fish and game agreements in which that designation occurred.

Moreover a "mistake about the sufficiency of an exemption applicant's property rights will not invalidate an exemption that has been granted," if the exemption holder is able to comply with the terms and conditions of the exemption. *Minnesota Department of Natural Resources,* 31 FERC ¶ 61,223, at 61,447 (1985) (citing *FERC Statutes and Regulations, Regulations Preambles* 1977–1981, ¶ 30,204, at 31,367 (1980), 45 Fed.Reg. 76115, 76119 (Nov. 18, 1980)). If a mistake about the sufficiency of property rights is not in itself a ground

9. Centralia claims that it did challenge PP & L's ownership by alleging its right of first refusal to purchase the Skookumchuck Dam from PP & L. The Commission properly found this right irrelevant to the property rights requirement. Since a leasehold will support an exemption, 18 C.F.R. § 4.102(f) (1984), it is clear that the property rights provision requires only that an applicant have the *present* ability to develop and operate an exempted project. The Commission does not require that an exemption holder have perpetual property rights in the site. *See id.*

for revocation, then *a fortiori*, insufficient documentation of property rights should provide no ground for revocation, absent any showing that the exemption holder is unable to comply with the terms of its exemption.

## V.  CONCLUSION

We conclude that the Commission did not abuse its discretion by requiring Centralia to provide cost estimates of its proposal, or in denying Centralia a permit on the ground of inadequate substantiation, that the Commission applied the proper standard in granting PP & L an exemption, that the grant of an exemption to PP & L was supported by substantial evidence and did not require an evidentiary hearing, and that the Commission did not violate its own regulations and precedent by finding that PP & L had adequately documented its property rights in the dam site.  Accordingly, the orders of the Commission denying Centralia's permit application and granting PP & L's exemption application are

AFFIRMED.